Luz A. LONG, Sylvia E. Velez, Mayela D. Salvador, and Lilian P. Baeza, Plaintiffs,

v.

FIRST UNION CORPORATION OF VIRGINIA d/b/a First Union Bank, Defendant.

Civ.A.No. 94–1175–A.

United States District Court, E.D. Virginia, Alexandria Division.

April 12, 1995.

Michael E. Veve, Lasa, Monroig & Veve, Washington, DC, for plaintiff.

Henry E. Hockeimer, Jr., Steptoe & Johnson, Washington, DC, for defendant.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter came before the Court on defendant's motion for summary judgment. Plaintiffs have alleged that defendant unlawfully discriminated against them on the basis of their national origin and race by instituting a policy requiring them to speak only English at the workplace. Plaintiffs Luz A. Long ("Long"), Sylvia E. Velez ("Velez"), Mayela D. Salvador ("Salvador"), and Lilian P. Baeza ("Baeza") are all residents of Virginia. Defendant First Union Corporation of Virginia ("First Union") is a Virginia corporation and all of the alleged activity occurred at the Culmore Branch located in Falls Church, Virginia. This Court has jurisdiction over these discrimination claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 2000e–5(f)(3), and has pendent jurisdiction over the state claims. Plaintiffs obtained a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") on June 21, 1994.

Plaintiff Long was born in the Dominican Republic and became a United States citizen in 1993. Plaintiff Velez is Puerto Rican, born in the United States and a United States citizen. Plaintiff Salvador was born in El Salvador and has been a permanent resident of the United States since 1990. Plaintiff Baeza was born in Chile and has been a permanent resident of the United States since 1989. Plaintiffs are all Hispanic by national origin, speak both Spanish and English and were all employed as tellers during the period alleged in the complaint. As of the time of the complaint, plaintiffs Salvador and Velez continue to be employed as tellers at the Culmore branch.

## BACKGROUND

Plaintiffs allege several counts against the defendant: discrimination in the course of employment, discrimination in the termination of employment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e; discrimination in violation of 42 USC § 1981; intentional infliction of emotional distress; and wrongful termination in violation of pub-

lic policy. Plaintiffs concede that they have no action for the charge of wrongful termination.

Plaintiffs allege that the defendant bank instituted a speak English-only policy at the Culmore branch which constitutes discrimination on the basis of national origin. On October 1, 1992 Arlene Butler ("Butler"), Assistant Vice President and Branch Manager at the Culmore branch, entered the lunch room and told plaintiffs Long, Velez and Salvador that they were not to speak Spanish at the bank unless it was to assist a Spanish speaking customer of the bank. Ms. Butler allegedly informed all of the plaintiffs again both orally and in writing that they were to speak only English while at work unless it was absolutely necessary to speak another language in order to conduct business. This instruction was allegedly repeated by Ms. Butler to all Culmore branch employees in a memorandum dated November 4, 1992 characterizing the rule as bank policy. Plaintiffs claim that Ms. Butler repeatedly instructed them to speak only English.

On November 16, 1992, Ricardo Barcells ("Barcells"), Culmore branch's Customer Service Manager, allegedly instructed plaintiffs Long, Salvador and Baeza to speak only English to each other while attending to a Spanish-speaking customer, and asked them to sign the November 4, 1992 memorandum or leave the branch. The plaintiffs allegedly refused to sign.

On November 18, 1992, plaintiff Long alleges that Ms. Butler threatened to give her a negative personnel evaluation for refusing to sign the November 4, 1992 memorandum and subsequently on December 28, 1992 delivered a memorandum to Ms. Long criticizing her performance and asking her to resign. Ms. Long allegedly refused to resign and was placed on a 30–day probation.

Between December of 1992 and December of 1993, plaintiffs individually began the process of filing discrimination charges against the defendant bank with the Fairfax County Human Rights Commission and the EEOC. This process was completed by March of 1994.

On January 1, 1993, a new branch manager, Angela Leeuwrik ("Leeuwrik"), replaced Ms. Butler. On February of 1993, employees of the Culmore branch were informed that the English-only speaking policy was no longer in effect and allegedly had never been official bank policy. Plaintiffs were told that they were welcome to speak Spanish at the workplace.

On April 28, 1993 plaintiffs Long, Velez and Salvador allege that they received a memorandum from the defendant critical of their performance and acknowledging that the English-only policy was no longer in effect. Plaintiffs allege that on April 21, 1993, Ms. Leeuwrik sent a memorandum to bank management complaining about the plaintiffs' behavior and performance. During the period of April 13–17, 1993, Ms. Leeuwrik and other bank employees allegedly wrote letters critical of the plaintiffs' behavior.

On March 9, 1994, the EEOC issued its determination on discrimination charges filed by plaintiff Luz Long, stating:

The U.S. Equal Employment Opportunity Commission ("EEOC") presumes that an employer's English-only rule is national origin discrimination if the rule is enforced at all times, but permits such a rule provided that it is enforced only at certain times, is justified by business necessity and adequate notice is provided. Charging Party alleges, and Respondent does not dispute, that the speak-English-only rule sought to be enforced by the Branch Manager was to be enforced at all times against employees who spoke Spanish.

Based on this analysis, I have determined that the evidence obtained during the investigation establishes violations of Title VII of the Civil Rights Act of 1964, as amended, on the basis of national origin, Hispanic, from October 1, 1992 through November 30, 1992.

By letter dated April 28, 1993 defendant First Union apologized to plaintiffs for the English-only policy at the Culmore branch indicating that it believed any restrictions on speaking Spanish had in reality been eliminated several months earlier. In this same letter, the bank stated that it was aware that the situation at the bank had continued to

deteriorate and customer service continued to suffer. The letter set forth expectations for employee performance on the job.

Plaintiff Long was allegedly discharged for insubordination on August 20, 1993 after an incident at work on August 18, 1993 when she brought a television to work, setting it up at the teller window. Plaintiff Baeza allegedly terminated her employment with First Union in January of 1994 because her work schedule could not be adjusted to accommodate her revised school schedule. Both Long and Baeza claim they were discriminatorily discharged. Plaintiffs Velez and Salvador are still employed as tellers by First Union.

Plaintiffs allege that this policy and the defendant's actions constitute discrimination on the basis of their national origin and that this policy was enforced only against them. Defendant claims this policy was implemented in response to complaints made by fellow employees that the Spanish-speaking employees were creating a hostile environment by speaking Spanish among themselves in the presence of other employees.

The defendant moves for summary judgment on all counts and has submitted attachments and affidavits in support of its motion. Plaintiffs respond with affidavits and statements. Summary judgment is appropriate when the party seeking judgment has shown that there is no dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the party moving for summary judgment has demonstrated the absence of a genuine issue of material fact, the non-moving party must come forward with concrete evidence in the form of "specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356, *quoting* Fed.R.Civ.P. 56(e). As discussed below, finding no genuine issue of material fact in dispute, this Court concludes that defendant's motion for summary judgment should be granted in favor of defendant.

## DISCRIMINATION IN THE COURSE OF EMPLOYMENT

Plaintiffs allege that the defendant through its employees have discriminated against and harassed them on the basis of their national origin with respect to terms, conditions, and privileges of employment, and created a hostile work environment in violation of Title VII. Plaintiffs claim these action were taken with malice and reckless indifference towards plaintiffs. The parties agree that the English-only policy limited the opportunity for the plaintiffs to speak Spanish at all times while at work except when necessary to assist a customer.

In their opposition to the motion for summary judgment plaintiffs claim that the implementation of this policy resulted in their being treated differently than other employees. Plaintiffs further claim that defendants acts had a significant adverse impact upon them, including: that plaintiffs were fearful when they "furtively" spoke Spanish to each other at the bank; that they suffered stress and humiliation as a result of enforcement of the policy; that plaintiffs were denied the opportunity to speak their native language while in the workplace; and, that the policy was enforced only against the plaintiffs.

The plaintiffs allege that this unlawful employment practice affects terms, conditions, and privileges of employment as covered by § 703 of Title VII which provides:

(a) It shall be an unlawful practice for an employer—

(1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin; or

42 U.S.C. § 2000e–2(a). The question before this Court is whether the speak English-only policy has a significant adverse impact on terms, conditions, or privileges of employment.

The plaintiff may attempt to prove discrimination by disparate impact or disparate treatment. Title VII covers both intentional discrimination and discrimination by

disparate impact. *See, e.g., Griggs v. Duke Power Co.,* 401 U.S. 424, 430–31, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158 (1970). The disparate treatment theory requires proof of discriminatory intent but the plaintiff need not show intentional discrimination in a disparate impact. *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 986–87, 108 S.Ct. 2777, 2784–85, 101 L.Ed.2d 827 (1988) (citations omitted).

### Disparate Impact

Plaintiffs cite to EEOC findings that an English-only policy, when enforced at all times, is a violation of Title VII on the basis of national origin. The Fourth Circuit has not ruled on the issue of whether an "English only" policy constitutes discrimination in violation of Title VII. However, three Circuits addressing this issue have held that English-only policies are not discriminatory if the employees speak English and are thus not disadvantaged in the job market. *See Garcia v. Gloor,* 618 F.2d 264 (5th Cir.1980); *Garcia v. Spun Steak,* 998 F.2d 1480 (9th Cir.1993); *Gonzalez v. Salvation Army,* 985 F.2d 578 (11th Cir.1993), *cert. denied,* —— U.S. ——, 113 S.Ct. 2342, 124 L.Ed.2d 252 (1993).

### EEOC finding that English-only Policy is Discrimination

The EEOC guidelines provide that an employee meets his or her burden of proving a *prima facie* case in a disparate impact cause of action merely by proving the existence of the English-only policy. *See* 29 C.F.R. § 1606.7(a) & (b) (1991). The EEOC has determined that an English only policy may "create an atmosphere of inferiority, isolation and intimidation based on national origin which could result in a discriminatory working environment". 29 C.F.R. § 1606.7(a).

■■■ This Court is not bound by the EEOC guidelines, *Espinoza v. Farah Mfg. Co., Inc.,* 414 U.S. 86, 94–95, 94 S.Ct. 334, 339–40, 38 L.Ed.2d 287 (1973), and does not find the language of Title VII supportive of the EEOC's conclusion. *See Spun Steak,* 998 F.2d 1480 (for a discussion of Congressional intent and the implementation of Title VII). 42 U.S.C. § 2000e–2(k)(1)(A) sets forth the plaintiff's burden of proof in disparate impact cases:

(k) Burden of proof in disparate impact cases

(1)(A) An unlawful employment practice based on disparate impact is established under this subchapter only if—

(i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; ...

The EEOC's determination that the mere existence of an English-only policy satisfies the plaintiff's burden of proof is not consistent with the drafting of the statute but is rather agency-created policy. The plaintiff still bears the burden of showing a *prima facie* case of discrimination.

■■■ A *prima facie* case of discriminatory impact requires the plaintiff to identify a seemingly neutral practice that has a significant adverse impact on persons of a protected class. *Connecticut v. Teal,* 457 U.S. 440, 446, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130 (1982); *Spun Steak,* 998 F.2d 1480. Once the *prima facie* case is made, the burden then shifts to the employer to offer evidence of a business justification. 42 U.S.C.A. § 2000e–2(k)(1)(A).

■■■ If the plaintiffs are asserting that the policy is considered a facially neutral test and impacted them more harshly than other employees, they are in fact alleging discrimination by disparate impact. *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 336 n. 15, 97 S.Ct. 1843, 1855 n. 15, 52 L.Ed.2d 396 (1977). While proof of a discriminatory motive is not required, plaintiffs must show that the policy cannot be justified by a business necessity. *Id.* If the employer proves that the challenged requirement is job related, the plaintiff may then show that other devices without a similar discriminatory impact would have served the employer's legitimate interest. *Griggs v. Duke Power*

*Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

■ The plaintiffs must ultimately prove that the reasons given by the defendant are pretext for discrimination. In order to meet their burden, the plaintiffs may not merely assert that the policy harmed Hispanics but must prove the existence of the adverse effects; that the adverse effects impact on terms, conditions, or privileges of employment; that these adverse effects are significant; and that the other employees were not affected by the policy to the same degree. *Spun Steak*, 998 F.2d at 1486. It is enough under Title VII if Hispanics are disproportionately impacted. *Id.*

■ The real question is whether the policy causes adverse effects on terms, conditions or privileges of employment of Hispanics. The plaintiffs claim the policy prohibits them from speaking their own language while at work. Denying bilingual employees the opportunity to speak Spanish on the job is not a violation of Title VII. There is nothing in Title VII which protects or provides that an employee has a right to speak his or her native tongue while on the job. *See, e.g., Spun Steak*, 998 F.2d 1480. The ability to converse on the job is a *privilege* of employment.

■ Title VII does not protect an individual's ability to express their cultural heritage while at the workplace by speaking in their native tongue. "The fact that an employee may have to catch himself or herself from occasionally slipping into Spanish does not impose a burden significant enough to amount to a denial of equal opportunity." *Id.* at 1488. These plaintiffs are all bilingual and, though the plaintiffs argue otherwise, there is evidence that the English-only policy was applied to all employees. In addition, Mr. Balcells, an Hispanic supervisor, distributed the memorandum about the English-only policy.

As the Ninth Circuit reasoned in *Spun Steak*, 998 F.2d at 1487, the employer has a right to define the parameters of the privilege of employment, defining when and where the employees may converse while on the job and may prohibit some manners of speech (i.e. profanity). It follows then that speaking one's native tongue at any time on the job is not a privilege of employment. The plaintiffs, who are all bilingual, may speak to each other while at work and are not adversely affected by the speak English-only policy. In addition, plaintiffs admit that they continued to speak Spanish while on the job. Thus, there is no disparate impact as the policy created no barrier to communication for the plaintiffs.

■ There is substantial evidence in the record demonstrating that the policy was enacted to prevent the employees from intentionally using their fluency in Spanish to isolate and to intimidate members of other ethnic groups. The plaintiffs claims that this reason is merely pretext for discrimination and indicates that whether there was a business necessity for the policy is a question for the trier of fact. Plaintiffs bear the burden of proving that defendant's temporary policy was not legitimate and necessary for business. The fact that defendant soon rescinded the policy does not establish that it was not necessary for business at the outset. The only inquiry for the Court is whether the policy was implemented in response to a legitimate business need.

### Disparate Treatment

■ The plaintiff may also attempt to prove discrimination by disparate treatment. The plaintiff bears the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Discriminatory intent is an essential element for a *prima facie* case of disparate treatment. *Warren v. Halstead Industries, Inc.*, 802 F.2d 746, 752 (4th Cir.1986). The plaintiffs may do this by direct or indirect relevant and probative evidence or may resort to the proof scheme set forth in *McDonnell Douglas*. Should the plaintiff carry this burden of proving a *prima facie* case, an inference of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

 If the defendant has produced evidence of a legitimate business reason for the practice, the plaintiff may still prevail if she can prove by a preponderance of the evidence that a discriminatory reason motivated the employer or that the employer's explanation is not credible. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 257, 101 S.Ct. 1089, 1095–96, 67 L.Ed.2d 207 (1981); *McDonnell Douglas*, 411 U.S. at 805–06, 93 S.Ct. at 1825–26. However, plaintiffs mere conclusory allegations of discrimination will not withstand a motion for summary judgment. Fed.R.Civ.P. 56(e).

 To prove that the proffered reason is pretextual, the plaintiffs must prove that they would not have suffered the adverse employment action "but for" their national origin. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976). If plaintiffs can show discriminatory intent, the defendant has asserted that this temporary rule was legitimate and necessary for business because of the complaints from fellow co-workers and the need to alleviate the tension in the workplace. The defendant alleges that several bank employees complained that the plaintiffs were making fun of them in Spanish and that the constant Spanish-speaking by the plaintiffs made these fellow employees uncomfortable. The policy was implemented to alleviate this tension. Without addressing the merits of the plaintiffs' *prima facie* case, this Court concludes that the plaintiffs have not sufficiently established that defendant's reason for the policy was mere pretext for discrimination.

The plaintiffs argue that the business reason offered by the defendant is not credible for the following reasons: for years the bank tolerated, indeed encouraged, plaintiffs to speak Spanish at the workplace without adverse consequences; it is not credible that bank supervisors had a need to know what the Spanish-speaking employees were saying to each other; the defendant rescinded its English-only policy and apologized for its implementation; the bank had not earlier criticized any of the plaintiffs for using Spanish while at work; and, there is no substantial work related reason to defend the implementation of this policy.

The fact that Spanish was spoken for years at the Culmore branch without adverse consequences does not support the plaintiffs' claims of discrimination. Rather, if as the plaintiffs assert, speaking Spanish was encouraged and was considered an advantage during the hiring process, the defendant's business reason that the policy was implemented to relieve a tense working environment is even more credible. Moreover, two of the bank supervisors working at the Culmore branch at the time of the policy in question were themselves Hispanic. While not conclusive, this fact undermines plaintiffs' argument.

Plaintiffs admit that sometimes fellow employees were talked about in Spanish because the plaintiffs did not want others to understand what they were saying. Plaintiffs further admit that the English-only policy was implemented after management had received complaints from fellow employees and supervisors that the plaintiffs were making fun of them in Spanish and this made them uncomfortable. Supervisors may well have a business need to see that their unit runs smoothly and efficiently. For plaintiffs to merely assert that there is no business need for the policy ignores the reality of the supervisor's responsibility on the job.

That the defendant rescinded the Culmore branch English-only policy is not an indication or admission of discrimination. This Court does not evaluate the wisdom of the business decision to implement or to rescind the policy but reviews whether, in fact, the policy was implemented with discriminatory intent. Proof of discrimination is the plaintiffs' burden. They have failed to prove discriminatory intent.

Affidavits submitted by the bank in support of their motion for summary judgment provide employees' and supervisors' statements describing the tense working environment created by the actions of the plaintiffs. This tension arguably existed during work hours and on breaks. The English-only policy was implemented to alleviate the tension at the worksite.

## DISCHARGE IN RETALIATION FOR FILING DISCRIMINATION COMPLAINTS

Plaintiffs Long and Baeza allege that they were discriminatorily discharged in violation of Title VII. Plaintiff Long alleges that her discharge was the result of retaliation for filing EEOC and Virginia Human Rights Commission ("VHRC") charges and because of her national origin. Plaintiff Baeza alleges that although she voluntarily quit her position, this termination constituted a constructive discharge because her supervisor allegedly refused to alter her work schedule to accommodate her school schedule.

■ To support a claim for discriminatory discharge, plaintiff must show: (1) that she is a member of a protected class, (2) that she was discharged, (3) that, at the time of the discharge, she was performing at a satisfactory level, and (4) that she was replaced with someone of comparable qualifications who is a person outside of her protected class. *EEOC v. Western Electric Co., Inc.,* 713 F.2d 1011, 1014 (4th Cir.1983); *see also, Carter v. Ball,* 33 F.3d 450, 458 (4th Cir. 1994).

■ Plaintiff Long has not satisfied the third prong of the test as there is sufficient evidence to conclude she was terminated for insubordination. The defendant has submitted affidavits that Long was discharged for an incident of insubordination occurring on or about August 18, 1993. Plaintiff Long has not provided evidence sufficient to overcome this conclusion.

■ To support her claim for retaliatory discharge, plaintiff Long must show (1) that she engaged in a protected activity, (2) that the employer took adverse employment action against her, and (3) that a causal connection existed between the protected activity and the adverse action. *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989), *citing, Ross Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985). Plaintiff must show that "but for" the filing of the charges, she would not have been terminated. *Ross,* 759 F.2d at 364. This *prima facie* case once established must be rebutted by legitimate, nondiscriminatory

reasons for the adverse action by the defendant. *Id.* at 365. Then the burden of proof lies with the plaintiff to establish by a preponderance of the evidence that the defendant's reason is pretextual. *Id.*

■ While Ms. Long did file EEOC and VHRC charges in 1992 and was fired in 1993, she has not produced any evidence other than her own conclusions that her termination was the result of her filing charges. "'[M]ere knowledge on the part of the employer that the employee ... has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for adverse personnel action against that employee.'" *Carter,* 33 F.3d at 460 (citation omitted). Plaintiffs Salvador and Velez filed similar charges of discrimination and are still employed with the bank, having since received favorable performance reviews. Again, plaintiff Long has not satisfied the burden of proving a *prima facie* case of retaliatory discrimination as she has not shown a causal connection between her termination and the protected activity.

■ Ms. Baeza claims that she was constructively discharged. To prove constructive discharge, she must show that her work conditions were intolerable, and that a deliberate effort was made by the defendant to force her to quit. *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied,* 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986). "Intolerability of working conditions, as the circuits uniformly recognize, is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Id.* at 1255 (citations omitted).

■ There is sufficient evidence to conclude that Ms. Baeza elected to quit her position after her supervisor could not or would not adjust her work schedule to accommodate her school schedule. Ms. Baeza, in her deposition testimony, states that other tellers have had their schedules adjusted. Even if true, the fact that a supervisor will not adjust a work schedule is not conclusively an adverse employment action in violation of Title VII. In fact, Ms. Baeza does not dis-

pute that she could have remained in her position as a teller if she had worked the hours already established for her. More importantly, Ms. Baeza has failed to establish a connection between her filing of discrimination charges and her supervisor's refusal to change the work schedule.

### RETALIATION IN THE COURSE OF EMPLOYMENT

Plaintiffs next claim that they were retaliated against at work for filing discrimination charges with VHRC and the EEOC. For any of the plaintiffs to support a claim of retaliation she would have to show she was engaged in a protected activity, that the defendant employer took adverse employment action against her, and that a causal connection existed between the protected activity and the adverse action. *Ross*, 759 F.2d 355. The Fourth Circuit has held that "a ... hostile work environment must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *Carter*, 33 F.3d at 461.

The plaintiffs argue that they have set forth sufficient facts to support a claim of harassment creating a hostile work environment on the basis of national origin. Such evidence includes: the memorandum instituting the English-only policy; Ms. Butler's alleged "threats" and "intimidation of dismissal" if plaintiffs continued speaking Spanish; cold treatment towards plaintiffs from Teller Supervisor Mann; "spying" against plaintiffs at the bank; and, Ms. Leeuwrik's "derogatory" statements about Hispanics. Two of the plaintiffs have continued employment with defendant bank and have received favorable performance evaluations and raises.

■■■ Plaintiffs must show that these actions constitute an adverse employment action and that the defendant took these actions because they filed discrimination charges. Plaintiffs allege that the delegation of extra work from Mr. Mann and his cold treatment towards them constitutes harassment. However, the delegation of duties from a supervisor to an employee, or the assertion of cold treatment from supervisors does not translate into harassment. Next, plaintiffs allege that they were given poor performance reviews in retaliation for their protected activity. Other than plaintiffs' own assertions that this was retaliation, there is an insufficient showing that such actions would not have been taken "but for" the filing of discrimination charges by the plaintiffs. Ms. Baeza's charges that her supervisor's refusal to accommodate her class schedule constitutes harassment. Again, other than plaintiff's mere assertions that this was done in retaliation for filing a discrimination charge, she has produced no showing that the schedule change was refused for retaliatory reasons.

■■■ Plaintiffs submit a letter from Ms. Leeuwrik to management after the plaintiffs had filed their discrimination charge, in which she allegedly states:

> I would have a greater understanding of the situation if these tellers had truly suffered injustice that needed correction. The situation, however, seems more appropriately described as four lazy and marginal employees who have grabbed an opportunity to defraud the bank and walk away with some money. I believe that I and the other employees of this branch deserve a workplace free of the tension and hostility that this environment has engendered. In addition, nothing that has been done to this point has alleviated this situation. In fact, the situation has and continues to deteriorate.

Plaintiffs argue that this passage is "powerful evidence" that Ms. Leeuwrik wanted the plaintiffs out of her branch. This statement fails to show that Ms. Leeuwrik's actions were based on plaintiff's national origin. Ms. Leeuwrik's statements could just as easily have been motivated by her belief that the plaintiffs were not performing adequately on the job or her belief that a hostile environment had been created by the plaintiffs speaking Spanish among themselves while at the branch.

Plaintiffs Velez and Salvador remained in their teller positions at the Culmore branch. As discussed above, the alleged acts of harassment of which they complain do not rise to a level sufficient for a finding of discrimination in the course of employment.

Ms. Baeza voluntarily terminated her employment and Ms. Long was terminated for insubordination.

▮ Even if the plaintiffs could establish an adverse employment action sufficient for a Title VII *prima facie* case, they have not established the causal connection between the adverse action and their filings of discrimination charges. Plaintiffs Baeza and Long merely point out that they did, in fact, file discrimination charges before the alleged adverse employment action and conclude that, because they know of no other reason for the action, it must have been because they filed charges. In Ms. Baeza's deposition testimony in support of her constructive discharge claim, she states that she received very cold treatment from her supervisors, Ms. Leeuwrik and Mr. Barcells. Title VII does not protect employees from uncomfortable working environments; plaintiff *must* show that the behavior of the defendant violated Title VII and they failed to do so. Bad manners or personal differences do not constitute harassment under Title VII. *See Williams,* 871 F.2d 452.

### SECTION 1981 CLAIM

▮ Plaintiffs claim that the defendant bank discriminated against them in violation of the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981. § 1981 protects against discrimination in private employment on the basis of race. *Johnson v. Railway Express Agency,* 421 U.S. 454, 461, 95 S.Ct. 1716, 1720–21, 44 L.Ed.2d 295 (1975). Assuming that Hispanic is a race [1] for purposes of this claim, plaintiff must prove purposeful discrimination. *Patterson v. McLean Credit Union,* 491 U.S. 164, 215, 109 S.Ct. 2363, 2393, 105 L.Ed.2d 132 (1989), *citing General Building Contractors Assn, Inc. v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). Intent may be proved from disparate impact, departures from procedural norms, a history of discriminatory actions, and other relevant facts. *See, Village of Arlington Heights v. Metropolitan*

*Hous. Dev. Corp.,* 429 U.S. 252, 264–68, 97 S.Ct. 555, 562–65, 50 L.Ed.2d 450 (1977). Plaintiffs can meet their *prima facie* burden by satisfying the same burdens applicable to their Title VII claim. *Williams,* 871 F.2d at 457–58. Other than their own conclusions that the English-only policy is discriminatory, plaintiffs have not presented any evidence to indicate that the bank intended to discriminate against them based on their race. Plaintiffs' failure to set out a Title VII claim makes their § 1981 fail as a matter of law.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

▮ To establish a claim of intentional infliction of emotional distress under Virginia law, the Virginia Supreme Court has stated that the plaintiff must prove:

(1) the wrongdoer's conduct was intentional or reckless;

(2) the conduct was outrageous and intolerable;

(3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and,

(4) the emotional distress was severe.

*Womack v. Eldridge,* 215 Va. 338, 210 S.E.2d 145, 148 (1974); *See also, Woodring v. Bd. of Grand Trustees,* 633 F.Supp. 583, 592 (W.D.Va.1986) (applying Virginia law). " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Russo v. White,* 241 Va. 23, 400 S.E.2d 160, 162 (1991), *quoting* Restatement (Second) of Torts § 46 comment d (1965). The bank's English-only policy does not meet this standard of outrageous conduct. This policy was implemented in response to a perceived need and plaintiffs were able to continue speaking to each other in English for the duration of the prohibition.

---

**1.** The U.S. Supreme Court stated in *Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987), that § 1981 protects against discrimination on the basis of "an-

cestry or ethnic characteristics", thus affording Hispanics a cause of action for discrimination based on race under this section.

For these reasons, the defendant's motion for summary judgment should be granted.