**Jessie I. KANIA**

v.

**ARCHDIOCESE OF PHILADELPHIA
and Sacred Heart Church.**

**No. CIV.A. 97–7136.**

United States District Court,
E.D. Pennsylvania.

July 28, 1998.

Sidney L. Gold, Lovitz & Gold, Philadelphia, PA, Hyman Lovitz, Lovitz & Gold, P.C., Philadelphia, PA, for Jessie I. Kania.

Nicholas Deenis, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for Archdiocese of Philadelphia.

Nicholas Deenis, Stradley, Ronon, Stevens & Young, Philadelphia, PA, Kevin L. Connors, Reger & Rizzo, Wayne, PA, for Sacred Heart Church.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before the Court are Defendants' Motion to Dismiss (Docket No. 6), Plaintiff's Opposition (Docket No. 8), Defendants' Reply (Docket No. 9), and Plaintiff's Sur–Reply (Docket No. 10). For the reasons that follow, Defendants' Motion is denied.

## I. BACKGROUND

At a September 7, 1995 meeting, Father Francis A. Barszczewski announced to his staff that henceforth the official language of Sacred Heart Church ("the Church") would be English, and that all employees must cease speaking the Polish language during business hours. This Motion requires the Court to decide whether, in the context of this case, the Church's "English-only" policy amounted to national origin discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2 (1994) ("Title VII"), and the Pennsylvania Human Relations Act, 43 Pa. Cons.Stat. Ann. § 955(a) (1997) (the "PHRA").

Plaintiff Jessie I. Kania is a Polish–American woman who worked for the Church as a housekeeper between December 10, 1990 and October 17, 1995. Although the Complaint does not state so directly, it is evident that Kania is fluent in both English and Polish. It is also evident that, at least until September 7, 1995, Kania spoke Polish on the job from time to time.

Father Barszczewski announced the English-only policy on September 7, and again on September 29. Minutes of the September 7 meeting reflect Barszczewski's reasons for establishing the rule: "[Barszczewski] said it is offensive and derisive to speak a language which others do not understand. Staff must mirror/show the way for the parish, especially since [Barszczewski] is asking the rest of the parish (organizations, councils, groups, etc.) to do the same." (Pl.'s Opposition Ex. B at 2). Kania represents that the English-only policy was a blanket rule that applied at all times during business hours, including when the Church's employees were at lunch, on break, and in non-public areas. She

claims that no legitimate business reason existed for the imposition of the policy.

Shortly after Barszczewski announced the policy, Kania communicated her objection to Barszczewski's secretary, Cathy Vickery. Kania complained that she believed the language restriction violated the law, and that Barszczewski did not have the right to prevent her from speaking her native language at work. A few weeks later, on October 17, 1995, Barszczewski fired Kania for the stated reason that she had failed to clean Barszczewski's room at the Church. In her Complaint, Kania alleges that this explanation was a pretext for terminating her due to her opposition of the English-only policy.

After exhausting her administrative remedies, and receiving a right to sue notice from the Equal Employment Opportunity Commission ("EEOC") on August 29, 1997, Kania filed her Complaint on November 20, 1997. In Count I, Kania charges the Church with discriminating against her on the basis of her national origin, and terminating her in retaliation for opposing the English-only policy, all in violation of Title VII. In Count II, Kania states an identical claim under the PHRA. Defendants now move to dismiss the Complaint for failure to state a claim for which relief can be granted, arguing that the Church's policy did not amount to national origin discrimination as a matter of law.

## II. DISCUSSION

### A. Standard of Review

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in the plaintiff's complaint as true, and draw all reasonable inferences in its favor. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). It may only grant the motion if, after viewing the complaint in the light most favorable to the plaintiff, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" under the applicable law. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994).

### B. National Origin Discrimination

Title VII provides that it is unlawful for an employer

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or *national origin;* or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or *national origin.*

42 U.S.C. § 2000e–2 (emphasis added).

To establish a prima facie case for retaliatory discharge under either Title VII or the PHRA, a plaintiff must demonstrate: (1) that she engaged in a protected activity; (2) that she was discharged subsequent to or contemporaneously with such activity; and (3) that a causal link exists between the protected activity and the discharge. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir.1996) (citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989); *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir.1994)).[1]

In their Motion, the Defendants argue Kania has failed to state a *prima facie* case of retaliation. Specifically, they attack Kania's attempt to satisfy the first prong—that Kania's opposition of the English-only rule was a protected activity. They argue that the Church's rule was not discriminatory as a matter of law, and as a result Kania's opposition to it cannot form the basis of a valid retaliation claim. Kania responds that the policy was discriminatory, citing the EEOC

---

1. The courts have interpreted the PHRA in accordance with the law of Title VII. *See Knabe v. Boury Corp.*, 114 F.3d 407, 410 n. 5 (3d Cir.1997) (citing *Hoy v. Angelone*, 456 Pa.Super. 596, 691 A.2d 476 (1997)). Therefore for the remainder of this opinion, the Court shall refer to the law of Title VII, recognizing that it applies to Kania's PHRA claim as well.

Guidelines, 29 C.F.R. § 1606.7(a) (1997), and *Gutierrez v. Municipal Court,* 838 F.2d 1031 (9th Cir.1988), *vacated as moot,* 490 U.S. 1016, 109 S.Ct. 1736, 104 L.Ed.2d 174 (1989). Failing that, she argues that she has nevertheless stated a valid retaliation claim under Title VII and the PHRA because, under the applicable law, she need only have had a reasonable belief that the English-only policy was discriminatory. The Court will address these contentions in turn.

### 1. *The English–Only Rule*

■ The Court first considers whether the Church's English-only rule amounts to national origin discrimination when applied to a Polish speaking bilingual employee. Thus far, only the Fifth and Ninth circuits have passed on the validity of English-only rules in the workplace, *see Garcia v. Gloor,* 618 F.2d 264 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); *Garcia v. Spun Steak Co.,* 998 F.2d 1480 (9th Cir.), *reh'g denied,* 13 F.3d 296 (9th Cir. 1993), *cert. denied,* 512 U.S. 1228, 114 S.Ct. 2726, 129 L.Ed.2d 849 (1994), and the Fourth and Eleventh circuits have issued unpublished opinions affirming District Court decisions on the question, *see Long v. First Union Corp.,* 86 F.3d 1151 (4th Cir.1996), *aff'g,* 894 F.Supp. 933 (E.D.Va.1995); *Gonzalez v. Salvation Army,* 985 F.2d 578 (11th Cir.), *cert. denied,* 508 U.S. 910, 113 S.Ct. 2342, 124 L.Ed.2d 252 (1993); *Prado v. L. Luria & Son, Inc.,* 975 F.Supp. 1349 (S.D.Fla.1997). All of these courts have agreed that—particularly as applied to multi-lingual employees—an English-only rule does not have a disparate impact on the basis of national origin, and does not violate Title VII. Although the Third Circuit has not yet reached this question, this Court has no difficulty finding that the present English-only policy is valid as a matter of law under Title VII.

The leading cases on this subject are *Gloor* and *Spun Steak.* In *Gloor,* defendant Gloor Lumber & Supply Co., located in Brownsville, TX, just above the Mexican border, established a rule prohibiting employees from speaking Spanish on the job unless they were communicating with Spanish-speaking customers. *See Gloor,* 618 F.2d at 266. At

trial there was testimony that Gloor adopted the rule for several business reasons: (1) to make all employee communications understandable to English-speaking customers; (2) to help train the Spanish-speaking employees in the use of the English language; and (3) to permit non-Spanish-speaking supervisors to understand and better oversee the work of their subordinates. *See id.* at 267. Although admittedly bilingual—speaking both Spanish and English—plaintiff Hector Garcia claimed he found it difficult to comply with the rule. He continued to speak Spanish at work and was eventually fired. *See id.* at 266.

Garcia sued Gloor under Title VII, arguing that the English-only rule amounted to discrimination on the basis of national origin. Specifically, he argued that "if an employee whose most familiar language is not English is denied the right to converse in that language, he is denied a privilege of employment enjoyed by employees most comfortable in English; this, necessarily, discriminates against him on the basis of national origin because national origin influences or determines his language preference." *Id.* at 268.

The Fifth Circuit disagreed. It found that while Title VII barred arbitrary employment practices made on the statutorily proscribed bases, it did not give a multi-lingual person the right to speak any particular language at work. "[T]here is no disparate impact," it found, "if the rule is one that the affected employee can readily observe and nonobservance is a matter of individual preference. Mr. Garcia could readily comply with the speak-English-only rule; as to him nonobservance was a matter of choice." *See id.* at 270. In essence, the court found that the multi-lingual employee's volitional decision severed the connection between language and national origin necessary to a finding of national origin discrimination. The court concluded

[Title VII] does not support an interpretation that equates the language an employee prefers to use with his national origin. To a person who speaks only one tongue or to a person who has difficulty using another language than the one spoken in his home, language might well be an immuta-

ble characteristic like skin color, sex or place of birth. However, the language a person who is multi-lingual elects to speak at a particular time is by definition a matter of choice.

\* \* \*

That this rule prevents some employees, like Mr. Garcia, from exercising a preference to converse in Spanish does not convert it into discrimination based on national origin. Reduced to its simplest, the claim is "others like to speak English on the job and do so without penalty. Speaking Spanish is very important to me and is inherent in my ancestral national origin. Therefore, I should be permitted to speak it and the denial to me of that preference so important to my self-identity is statutorily forbidden." The argument thus reduces itself to a contention that the statute commands employers to permit employees to speak the tongue they prefer. We do not think the statute permits that interpretation, whether the preference be slight or strong or even one closely related to self-identity.

*Id.* at 270–71. Accordingly, the Fifth Circuit found that Gloor's language restriction did not amount to national origin discrimination.

In *Spun Steak*, the Ninth Circuit was presented with similar facts and arrived at the same conclusion. Over two-thirds of the employees at the Spun Steak Company spoke Spanish, and all but two spoke English as well. After receiving complaints that some of the Spanish-speaking workers were making racially offensive comments to English speaking employees in a language they could not understand, Spun Steak instituted an English-only policy "to promote racial harmony," and to improve communication in general at its plant. *See Spun Steak*, 998 F.2d at 1483. Spun Steak's rule expressly limited the language restriction to the factory floor, and permitted free use of Spanish during lunch, breaks, and after hours. *See id.*

After the rule became effective, two bilingual employees who originally had been charged with engaging in racial harassment continued speaking Spanish, and the company took disciplinary action against them, including barring them from working next to each other. *See id.* at 1484–85. With the support of their labor union, they sued Spun Steak, claiming the English-only policy had a disparate impact on Hispanic employees and thus violated Title VII.[2] The District Court agreed, and granted the plaintiffs' motion for summary judgment.

Upon appeal, the Ninth Circuit posed the question of whether the English-only rule caused any legally cognizable adverse effects at all. Like the *Gloor* court before it, the *Spun Steak* majority reached the conclusion that it did not.

The *Spun Steak* plaintiffs made three principal arguments: (1) that the rule denied them the ability to express their cultural heritage on the job; (2) that it denied them the privileges enjoyed by mono-lingual English-speaking employees on the job; and (3) that it created an atmosphere of inferiority, isolation and intimidation. *See id.* at 1486–87. As to the first argument, the court found that Title VII does not protect the ability of workers to express their cultural heritage at the workplace, as Title VII is concerned only with disparities in treatment, and does not confer any substantive privileges. *See id.* at 1487 (citing *Gloor*, 618 F.2d at 269). As to the second argument, the court found that it is the employer's prerogative to define the privilege of worktime conversation.

When the privilege is defined at its narrowest (as merely the ability to speak on the job), we cannot conclude that those employees fluent in both English and Spanish are adversely impacted by the policy. Because they are able to speak English, bilingual employees can engage in conversation on the job. It is axiomatic that "the language a person who is multi-lingual elects to speak at a particular time is ... a matter of choice." *Garcia*, 618 F.2d at 270. The bilingual employee can readily comply with the English-only rule and still enjoy the privilege of speaking on the job. "There is no disparate impact" with respect to a privilege of employment

---

2. Although the court does not state so directly, it appears that the *Spun Steak* plaintiffs claimed discrimination on the bases of both race and national origin.

"if the rule is one that the affected employee can readily observe and nonobservance is a matter of individual preference." *Id. Spun Steak,* 998 F.2d at 1487. Because the plaintiffs were bilingual, and could have complied with the rule, the court found that it did not deny them any significant workplace privileges.

■ Finally, the plaintiffs argued that Spun Steak's rule operated to create an atmosphere of inferiority, isolation and intimidation. As Kania does in this case, the plaintiffs relied on EEOC Guidelines—adopted after *Gloor*—that purport to make English-only rules in the workplace prima facie unlawful, unless the employer can make a showing of business necessity. *See* 29 C.F.R. § 1606.7(b) (1997). The Ninth Circuit found that the plaintiffs had come forward with no evidence that the rule actually contributed to an atmosphere of isolation, inferiority or intimidation. The EEOC Guidelines would have reversed the burden of proof and forced Spun Steak to demonstrate a business necessity or suffer liability. However, the Ninth Circuit concluded that the EEOC's interpretation lacked support in the statute, and there were "compelling indications that it [was] wrong." *Spun Steak,* 998 F.2d at 1489–90 (quoting *Espinoza v. Farah Mfg. Co., Inc.,* 414 U.S. 86, 94–95, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973)). In the absence of the EEOC Guidelines, the burden or proof remained with the plaintiffs. Accordingly, the Ninth Circuit found, the plaintiffs had failed to demonstrate that the rule in fact created an atmosphere of inferiority, and could not establish that the rule violated the provisions of Title VII. *See id.*

The remaining two cases, *Prado,* 975 F.Supp. at 1349 and *Long,* 894 F.Supp. at 933, reached the same result, but by different means. *Prado* assumed the EEOC Guidelines were valid, and found that the English-only rule at issue passed the test of business necessity. *See Prado,* 975 F.Supp. at 1357. *Long* followed *Spun Steak* in finding the EEOC Guidelines invalid, as beyond the scope of the agency's authority to interpret the statute. *See Long,* 894 F.Supp. at 940. *Long* noted that Congress enacted a specific and detailed framework for the burden of

proof in disparate impact cases, *see* 42 U.S.C. § 2000e–2(k). As the EEOC's interpretation of the burden of proof directly contradicted the plain terms of the statute it purports to interpret, the court found, the EEOC Guidelines must be wrong. *See Long,* 894 F.Supp. at 940.

In the present case, Kania relies on the EEOC Guidelines to make her case. She argues the Court should follow the Ninth Circuit's pre-*Spun Steak* decision in *Gutierrez,* 838 F.2d at 1040, which held that the EEOC Guidelines controlled, and applied them to find a state court system's English-only rule amounted to national origin discrimination. But upon appeal, the Supreme Court vacated *Gutierrez* as moot, *see Gutierrez,* 490 U.S. 1016, 109 S.Ct. 1736, 104 L.Ed.2d 174, and the case now lacks any precedential authority. *See Spun Steak,* 13 F.3d at 300 (Reinhardt, J., ·dissenting). Since then, the Ninth Circuit adopted a dramatically opposite position in *Spun Steak.* Although there remains some debate within the Ninth Circuit on the subject, *see Spun Steak,* 998 F.2d at 1490 (Boochever, J., dissenting), *reh'g denied,* 13 F.3d 296 (Reinhardt, J., dissenting), the majority opinion in *Spun Steak* stands as the law in the Ninth Circuit.

■ In any case, the Court agrees with *Spun Steak* and *Long* that the EEOC Guidelines must be disregarded. Despite the deference ordinarily due to official administrative guidelines and regulations, *see Albemarle Paper Co. v. Moody,* 422 U.S. 405, 431, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), such guidelines and regulations may not exceed the authority of the statue they purport to interpret. *See Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 472, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977) (quoting *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 213–14, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)); *Espinoza,* 414 U.S. at 95, 94 S.Ct. 334. Title VII explicitly provides the burden of proof applicable to disparate impact cases. *See* 42 U.S.C. § 2000e–2(k). An agency interpretation, like that in 29 C.F.R. § 1606.7, at variance with the statute it interprets must be outside the scope of the agency's interpretive authority, and must be

wrong. *See Espinoza*, 414 U.S. at 95, 94 S.Ct. 334; *Spun Steak*, 998 F.2d at 1489. Therefore, the Court shall disregard the EEOC Guidelines in determining whether the Defendants have engaged in national origin discrimination.

■ Without the leverage provided by the EEOC Guidelines, Kania's claim that the English-only rule amounted to national origin discrimination, as applied to her, quickly collapses. Title VII does not protect the ability of workers to express their cultural heritage at the workplace. *See Spun Steak*, 998 F.2d at 1487. Furthermore, Kania admits that she is bilingual. Because she could have readily complied with the English-only rule, it did not cause a legally cognizable adverse impact upon the terms and conditions of her employment. *See id.* at 1488. Accordingly, Kania has failed to prove that the defendants engaged in national origin discrimination as a matter of law.

■ But even if the Court assumes, like the *Prado* court, *see Prado*, 975 F.Supp. at 1357, that the EEOC Guidelines apply, there is no doubt that the Church's English-only rule had a valid business justification. Although Kania suggests that Father Barszczewski instituted the rule for purely personal reasons, the documents Kania submits in favor of her position demonstrate otherwise.[3]

After reviewing the Staff Meeting Minutes submitted by Kania, it is clear that the Church adopted its English-only rule to improve interpersonal relations at the Church, and to prevent Polish-speaking employees from alienating other employees, and perhaps church members themselves. The courts in *Spun Steak*, *Gloor* and *Prado* upheld the validity of workplace English-only rules adopted for similar reasons. Accordingly, the Court finds that in adopting the challenged rule, the Church had business justification as a matter of law.

For the foregoing reasons, the Court finds Kania cannot demonstrate that the Church's English-only rule had an unlawful disparate impact upon her on the basis of national origin, in violation of either Title VII or the PHRA.

### 2. *Retaliation*

■ Kania responds, however, that even if the English-only rule is not discriminatory, she nevertheless can establish the first prong of her retaliatory discharge claims because, at the time she opposed it, she reasonably believed that it was discriminatory.

■ It is well-settled that a plaintiff in a retaliatory discharge claim need only prove that, at the time she opposed it, she reason-

---

3. Because a motion to dismiss is meant to test a complaint's legal sufficiency, as opposed to its basis in fact, courts generally limit their consideration to the complaint, exhibits attached to the complaint, and matters of public record. *See Foust v. FMC Corp.*, 962 F.Supp. 650, 651–52 (E.D.Pa.1997). To prevent abuse of the Rule 12(b)(6) standard, however, the Third Circuit established an exception for certain important documents:

> a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.

*Pension Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994) (citation omitted). It is fair to consider the extrinsic document without converting the motion into one for summary judgment, the Court reasoned, because a plaintiff

who has relied on a document in his complaint is on notice that it might be used against him. *See id.*

Courts have relied on *Pension Guaranty* in many cases to consider material that a plaintiff has referenced in the complaint but neglected to provide. For example, in *Dykes v. Southeastern Pennsylvania Transp. Auth.*, 68 F.3d 1564, 1567 n. 3 (3d Cir.1995), *cert. denied*, 116 S.Ct. 1434, 517 U.S. 1142, 134 L.Ed.2d 556 (1996), the Third Circuit considered a SEPTA collective bargaining agreement—omitted from the plaintiff's complaint—in determining whether it had reasonable suspicion to support a mandatory body fluids test. Similarly, in *Foust*, 962 F.Supp. at 652, the Court considered the civil rights plaintiff's right-to-sue letter, noting that she relied on it to prove her case and did not question its authenticity. *See also Klein v. Boyd*, 1996 WL 230012, *7 (E.D.Pa. May 3, 1996); *Johnakin v. City of Philadelphia*, 1996 WL 18821, *7 (E.D.Pa. January 18, 1996); *J/H Real Estate, Inc. v. Abramson*, 901 F.Supp. 952, 954 (E.D.Pa.1995). It is therefore well established that a court may consider omitted documents where their content and meaning are central to the plaintiff's complaint.

ably believed that the challenged employment practice was unlawful. *See Aman*, 85 F.3d at 1085 ("protesting what an employee believes in good faith to be a discriminatory practice is clearly protected conduct"); *Moyo*, 32 F.3d at 1385 ("It is not necessary, however, that the employment practice actually be unlawful; opposition clause protection will be accorded whenever the opposition is based on a reasonable belief that the employer has engaged in an unlawful employment practice.") (quotation marks omitted); *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir.1983). Therefore, although the Court has found the Church's English-only rule to be non-discriminatory, Kania may still satisfy the first prong of the *prima facie* case by proving that she reasonably believed that it was discriminatory.

Although Defendants complain that it is senseless for a Title VII or PHRA claim to go forward where there has been no actual discrimination, the Court can identify at least two reasons why it should. First, the law recognizes that many employees, unlike their employers, lack legal sophistication and do not have instant access to competent legal advice, *see Moyo*, 32 F.3d at 1385–86, and that the outcomes of some legal disputes are too uncertain for even competent lawyers to forecast in advance. The retaliation theory protects an employee who has the strength to oppose an employer's practices, and initiate a dialogue that may lead to an informal resolution of workplace tensions. If the law did not protect all employees who reasonably believed that a certain practice was discriminatory, it would undermine an incentive structure designed to flush out workplace conflicts into the light, and foster communication and accommodation. Second, the law gives an employer whose practices have been challenged the incentive to resolve even a dispute in which it is legally correct in a conciliatory, rather than an imperious, manner. Although the Court has found that the Church's English-only policy was non-discriminatory, the above reasons explain why the law permits Kania's claims to survive the Defendants' Motion to Dismiss in this case.

### III.  CONCLUSION

To establish a *prima facie* case for retaliatory discharge under Title VII and the PHRA, a plaintiff must demonstrate (1) that she engaged in a protected activity; (2) that she was discharged subsequent to or contemporaneously with such activity; and (3) that a causal link exists between the protected activity and the discharge. In their Motion to Dismiss, the Defendants attacked the first prong of Kania's *prima facie* case, arguing that the Church's English-only rule did not constitute national origin discrimination as applied to Kania. The Court agrees with the Defendants that the English-only rule was not discriminatory. However, Kania may still satisfy the first prong of her *prima facie* case by proving that she reasonably believed that the rule was discriminatory. Accordingly, the Defendants' Motion to Dismiss is denied.

An appropriate Order follows.

### ORDER

AND NOW, this 28th day of July, 1998, upon consideration of Defendants' Motion to Dismiss, Plaintiff's Opposition, Defendants' Reply, and Plaintiff's Sur–Reply, IT IS HEREBY ORDERED that the Defendants' Motion is **DENIED**.