Mercy PRADO, Plaintiff,

v.

L. LURIA & SON, INC., Defendant.

No. 95–2263–CIV.

United States District Court,
S.D. Florida.

April 14, 1997.

Andrew B. Peretz, Duker, Barrett & Gravante, Ft. Lauderdale, FL, Juan Pablo Gonzales–Sirgo, Coral Gables, FL, for Plaintiff.

Robert Louis Norton, Peter Louis Sampo, Allen, Norton & Blue, P.A., Coral Gables, FL, for Defendant.

## CORRECTED ORDER ON MOTION FOR SUMMARY JUDGMENT

FERGUSON, District Judge.

**THIS CAUSE** is before the Court on the defendant's motion for summary judgment. The main issue presented is whether the defendant's English-only workplace rule imposed a discriminatory employment environment on an employee whose preferred language is Spanish. Both the plaintiff and the amici curiae [1] ask this Court to ignore case law of the Eleventh and Fifth Circuit Courts of Appeal [2] as based on a "fundamentally flawed" analysis. As a solution to the problem of English speaking supervisors not un-

---

1. The Employment Law Center and American Civil Liberties Union of Northern California.

2. Decisions of the Fifth Circuit Court of Appeal made prior to September 30, 1981 are binding precedent on the Eleventh Circuit Court of Appeal. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

derstanding conversations between bilingual employees who choose to speak Spanish in the workplace, the plaintiff suggests that only bilingual persons should be hired or promoted to supervisory positions.

First, this Court is not free to depart from the law as pronounced by this Circuit's appellate courts which holds that a workplace rule requiring employees to speak English may serve a legitimate nondiscriminatory purpose. This case is factually indistinguishable from the controlling cases where English-only workplace rules were upheld. Further, the Court has no authority to require, and employers have no obligation to adopt, as an alternative to an English-only workplace rule, the promotion to supervisory positions only persons who are fluent in both Spanish and English.

*Claims*

The plaintiff Mercy Prado brings this action under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 against her former employer L. Luria & Son, Inc. ("Luria's"). Mrs. Prado claims that she was forced to leave her employment because of a discriminatory and hostile work environment. Specifically, the plaintiff alleges that: (1) Luria's policy that employees speak English only violates Title VII; (2) the work environment in which she worked was hostile and abusive; and (3) she was denied promotions and pay increases because of her national origin.

*Background Facts*

Mrs. Prado migrated to Florida from Cuba in 1979 as a sixteen-year-old and has been here for eighteen years. While she spoke only Spanish upon arrival to this country, the plaintiff attended four years of high school in Miami where she learned to speak, read and write English.

Prado was employed by Luria's from October 1987 through April 1990, and again from October 1992 through November 1994. During her first tenure at Luria's she was promoted from part-time cashier for the Christmas season to full-time cashier and was then trained to assist with bookkeeping duties. She was offered, but refused, a promotion to head bookkeeper. In early 1990, Prado left Luria's for another job, giving the reasons that the other job was better paying and that the schedule on the new job gave more flexibility for personal needs. She was told that while Luria's could not match the pay offer, she could come back if she ever needed a job. After one year Mrs. Prado was laid off from the new job and sought re-employment at Luria's. While there was no immediate opening, she was rehired as an assistant bookkeeper when the first job became available in October 1992. Later she was promoted to Customer Service Manager. Prado was assigned first to the Biscayne location of Luria's, then to the Cutler Ridge store to help train cashiers and bookkeepers, and finally to the opening Coral Gables store where she also trained cashiers and bookkeepers and assisted in hiring.

Prado tendered a resignation in March 1994 to Juan Guerra, a Hispanic manager, giving personal reasons. In response, Guerra offered her a newly-formed job of "District Customer Manager" traveling from store to store training key employees. The position was to pay a higher salary. Ms. Prado requested a one week absence without pay; Guerra, instead, gave her the week off with pay. Prado alleges that she was not given the salary increase because approval was denied by Joseph Bombara, then a Vice President of Luria's. She was told, however, that the pay raise needed budget approval.

In the new position Prado worked at the new and old Biscayne stores, closing the first and opening the second. She came into daily contact with Joseph Bombara. For two months, Prado alleges, Bombara made fun of her accent at least once a day, sometimes asking in what she perceived as mimicry "Can you repeat that?" On one occasion, she claims, he told her she should be ashamed but did not explain why, which she perceived as disparaging to her Hispanic origin. Ida Tejera, the District Manager at Luria's, testified that Bombara also made fun of her accent. Another Luria's employee, Rebecca Hartman, testified that she overheard Bombara state that if it were his decision he would fire all of the Hispanic employees at Luria's. There is no evidence that the last

remark was made to, or overheard by, Prado or any other Hispanic employee.

In August 1994, Prado began working at the Coral Ridge store under store manager William Merrill. She accompanied Merrill when he left to open a new store in Coral Gables. Prado testified that Merrill said he did not like the Coral Gables area because there were "too many Spanish speaking people"; that he would like to have more Anglo–American employees working for him there; and that Prado, who had hiring responsibilities, should not employ any blacks or persons with heavy Spanish accents. Merrill also began for the first time to make fun of Prado's accent and to strictly enforce the English-only policy. At the opening of the store Merrill, allegedly, yelled at Prado for allowing a person with a heavy Spanish accent to use the store-wide public address system and answer the phone.

On November 7, 1994, Prado quit Luria's. She states that she was forced to leave because of Luria's strict enforcement of its English-only policy, the jokes and mimicry concerning her Spanish accent, Luria's requirement that no one with a heavy Spanish accent speak on the P.A. system or answer telephones, and, generally, the humiliation she felt over Luria's conduct toward her.

Soon after she resigned, Prado was contacted by district manager Guerra who inquired why she had left. Prado also spoke with Luria's General Counsel who apologized to Prado and informed her that an investigation would be conducted. On November 18, 1994, a Spanish radio station broadcast of the incident, initiated by Mrs. Prado's husband, criticized Luria's and its English only policy. Shortly after the public broadcast Guerra again called Prado and offered her a position where she would not have to work with Mr. Merrill. She did not accept and asserts that it was because her problem was with the

company, not only with Bombara and Merrill. On November 23, 1994, after an investigation, Luria's fired Bombara. While Prado alleges that Luria's did not contact her to make her aware of that action, Luria's asserts that Prado was aware the position was still open after Bombara was terminated. All of these actions occurred within the two and one-half weeks following Prado's departure.

*Standard of Review*

A district court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party meets its burden of proving its entitlement to summary judgment, the nonmoving party must demonstrate that there is "evidence from which a jury might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The Court must view the evidence, and take all permissible factual inferences, in the light most favorable to the plaintiff. *Matsushita Elec. Ind. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

*English Only Policy*

Two arguments are advanced by the plaintiff: (1) she was discriminated against because she is not fully bilingual and prefers to speak Spanish; and (2) as a remedy the employer should hire or promote to supervisory positions only persons who are fluent in both English and Spanish in order to accommodate the plaintiff and others similarly situated.[3]

---

**3.** In many instances, a criteria for employment in sales or customer service positions where the market is made up largely of immigrants is an ability to speak two or more languages. The policy works to eliminate American-born applicants who speak only English. Nonetheless, bilingualism as a criteria for employment may survive a challenge for discrimination as furthering a legitimate employer interest—accommodating customers who cannot speak English.

The policy is suspect, however, as discriminatory against persons who speak only English where it is geared primarily to benefit employees, rather than customers, who are not proficient in English. The second part of the plaintiff's argument, that the employer should hire only bilingual supervisors, underscores how such a criteria, if misapplied, could swallow the policy behind the employment requirement for bilin-

**1354**

■ An English-only rule by an employer does not violate Title VII as applied to bilingual employees so long as there is a legitimate business purpose for the rule. *Garcia v. Gloor,* 618 F.2d 264, 271 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); *Gonzalez v. The Salvation Army,* Case No. 89–1679–CIV–T–17 (M.D.Fla.1991), *aff'd,* 985 F.2d 578 (11th Cir. 1993), *cert. den.* 508 U.S. 910, 113 S.Ct. 2342, 124 L.Ed.2d 252 (1993). In *Gonzalez,* the Court upheld the English-only policy on grounds that it served two legitimate business purposes: (1) providing English speaking supervisors the ability to manage the enterprise by knowing what was said in a work area; and (2) providing non-Spanish speaking employees the ability to understand what was being said.

■ Luria's has asserted two legitimate reasons for enforcing an English-only policy: (1) to encourage store employees to speak English among themselves which would facilitate the practice of approaching customers first in English; and (2) to ensure that management understands what is being said in order to evaluate employees in all work related communications. Store manager William Merrill also stated that his insistence on compliance with the policy was in response to customer complaints.

In urging a rejection of case law of the Eleventh Circuit, the plaintiff and the amici curiae ask the Court to instead apply either the EEOC guidelines or a disparate impact theory, or to distinguish this case factually.

■ The EEOC interprets national origin discrimination as including discrimination against an individual who "has the physical, cultural or linguistic characteristics of a na-

tional origin group." 29 C.F.R. § 1606.1(a). The EEOC's test for examining English-only rules is as follows: (1) a rule applied at all times will be presumed to violate Title VII and will be closely supervised; (2) a rule applied only at certain times may be permitted where an employer can show it is justified by business necessity. First, EEOC regulations do not possess the force of law. *General Electric Co. v. Gilbert,* 429 U.S. 125, 141, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976). Further, while the decision in *Garcia* predated the EEOC guidelines, that decision has been followed and upheld by Courts within this Circuit. *Gonzalez,* cited above, was affirmed by the Eleventh Circuit subsequent to the promulgation of the EEOC Regulations. Even under the EEOC guidelines, however, the English-only rule may be justified by business necessity.[4]

■ Under the disparate impact theory, a plaintiff can establish a prima facie case of discrimination by demonstrating that the specific practice complained of has a disproportionately adverse impact upon members of a protected group. *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The Court in *Garcia* specifically rejected the argument that an English-only policy has a disparate impact finding instead that choice of language, like other behaviors, is a matter of individual preference. *Id.* at 270. Similarly, here the plaintiff seeks a right to speak Spanish in the workplace as a matter of preference.

Finally, there is no factual basis for distinguishing this case from the controlling judicial decisions and this Court is not free to reject the legal principal pronounced in those cases.[5]

gualism and give constitutional ammunition to English speaking employees who find it threatening to their occupational interests.

4. Prado contends that Luria's English only rule applied also to private communications during breaks, but when questioned directly on the subject admitted that she had never been instructed to speak English away from the sales floor or business offices. She explained that she "believed" the policy applied at all times.

5. Plaintiff attempts to distinguish this case on the ground that she is not fully bilingual but is Spanish dominant, citing *Hernandez v. New York,* 500

U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), where, she contends, the Court found that the ability to "turn-off" a language far more complicated and difficult than presumed in Gloor.

The issue in *Hernandez* was whether the prosecutor's use of a peremptory challenge to remove a bilingual juror, for the reason that he expressed uncertainty about an ability to defer to the official translation of trial testimony, constituted a racially discriminatory use of the challenge. In holding that it did not, the Court acknowledged existing scholarly comment that "people proficient in two languages may not at all times think

*Hostile or Abusive Work Environment*

■ To establish a prima facie case of harassment/hostile work environment under Title VII an employee must prove: (1) the employee belongs to a protected group; (2) the employee was subject to "unwelcome" harassment; (3) the harassment complained of was based on national origin; (4) the harassment affected a "term, condition, or privilege" of employment in that it was "sufficiently severe and pervasive to alter the condition of [the victim's] employment and create an abusive working environment"; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554 (11th Cir.1987).

■ In determining whether an environment is hostile or abusive, the Court should consider: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The standard applied is an objective standard not based solely on the employee's subjective feelings. *Id.*

■ Viewing the evidence and all permissible factual inferences in a light most favorable to the plaintiff, the Court finds the

in one language to the exclusion of the other." *Id.* at 370, 111 S.Ct. at 1872.

Hernandez lends no support to the contention that Gloor was wrongly decided. The question whether prohibiting use of a foreign language in the workplace is, *per se*, an act of hostility is decidedly different from whether an inability to follow a court's instruction to defer to an official translation of testimony is grounds for removal from a jury.

6. A number of allegations set forth in the plaintiff's response in opposition to the defendant's motion and in her statement of material facts in dispute are either not supported by or are different from statements made in her deposition testimony.

For example, at an Unemployment Compensation Hearing where she applied for benefits, the plaintiff testified that she quit Luria's because of the English-only policy and Mr. Merrill's comment regarding people with heavy accents an-

following facts relevant to Prado's claim that she was-subjected to a hostile and abusive work environment.[6] In addition to her complaints regarding the English-only policy, Prado alleges that she was told to prohibit those with heavy accents from using the P.A. system or answering the phone; Mr. Merrill, her supervisor, made fun of her accent, told her he did not like the Coral Gables store because there were too many Hispanics, and told her not to hire blacks or Hispanics with heavy accents; Mr. Bombara told her once that "she should be ashamed" but would not explain why and would ask her to repeat words or statements; and other employees were made fun of because of their heavy Spanish accents.

■ In a hostile work environment action the conduct complained of must be persistent and routine rather than isolated or sporadic in nature in order to be sufficiently severe and pervasive as to alter the conditions of a plaintiff's employment. *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428 (7th Cir.1995). An employer is not strictly liable for all harassment unless it takes the form of an abuse of authority. *Id.* at 431.

■ The incidents which the plaintiff complains of took place in 1994 at the Biscayne store over a three month period, and at the Coral Gables store over a one month period. Her earlier experience at Luria's over the years was apparently favorable.

swering the phones, expressly stating that there was no other reason for quitting. In the later affidavit opposing the defendant's motion for summary judgment, she stated that she was subjected to daily derogatory remarks and hostile jokes about her Spanish accent by Mr. Bombara, was warned on a daily basis to speak English only, and that Mr. Merrill walked through the store each day snapping his fingers stating "no Spanish, no Spanish."

To the extent that these new allegations vary from the sworn testimony for the purpose of creating a material issue of fact or law, they are rejected. *Unterreiner v. Volkswagen of America, Inc.*, 8 F.3d 1206, 1210 (7th Cir.1993)(holding that facts alleged in an employee's affidavit were insufficient to raise an issue of fact for the purposes of defeating a summary judgment where the affidavit contradicted the employee's earlier deposition statements). Other assertions of facts regarding the employer's facility are irrelevant to the legal issues presented in this case.

Further, there is not the required showing that the work environment is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Harris.* The mere utterance of comments which the employee deems offensive is not, alone, conduct so severe or pervasive as to create an objectively hostile or abusive environment from the perspective of a reasonable person. *Id.*

█ Also of significance is that Hispanics are not a minority within Luria's work force. Mrs. Prado estimated that 94 per cent of the individuals hired at the Coral Gables store were Hispanic, and that Hispanic persons made up 70 per cent of management. Although a member of a majority group may be a victim of discrimination, that majority status is a factor the court may consider in determining whether there is discriminatory intimidation. *See Harris,* 510 U.S. at 22–24, 114 S.Ct. at 371.

█ Assuming that the psychological impact was so severe as to interfere with the plaintiff's ability to perform her duties, the defendant would still be immune from liability. Prado never reported any of these allegedly harassing incidents to anyone at Juria's prior to her resignation. It was therefore highly improbable that Luria's knew of a need to take reasonable steps to rectify any harassment prior to Prado's resignation. *Baskerville,* 50 F.3d 428, 432 (holding that an employer's legal duty is discharged if it takes reasonable steps to discover and rectify acts of harassment). There is no evidence in the record that Luria's knew of the offensive utterances and of a need for corrective action.

█ Courts are guided by common law principles in determining employer liability on a case-by case basis. *Meritor Savings Bank FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Generally, when a supervisor uses the power delegated specifically to him by his employer to discriminate,

that employee's actions may be imputed to the employer. *Id.* at 72, 106 S.Ct. at 2408. In a Title VII hostile workplace claim, where the law differs, the employer will not be held liable unless the employer itself has engaged in some degree of culpable behavior. *Kinman v. Omaha Public School Dist.,* 94 F.3d 463, 469 (1996). The employer may be held liable, however, if it knew or should have known of the harassment *and* failed to take appropriate remedial action. *Id.; Callanan v. Runyun,* 75 F.3d 1293, 1296 (8th Cir.1996). Luria's did take remedial action after Prado's sudden departure, firing Mr. Bombara after it completed an investigation two and one-half weeks later and offering the plaintiff positions in stores other than those where she felt the work environment was hostile.

### Disparate pay based on National Origin

█ The plaintiff claims she was denied promotions and pay increases because of her national origin, and that less experienced and less qualified non-Hispanic employees received promotions, wage increases, and higher salaries. The basis of the plaintiff's claim of disparate pay is that Mike Parker, another Luria's employee, was paid more.[7] The defendant offers alternative, nondiscriminatory reasons for the pay disparity. First, Parker's position as warehouse manager was a higher paid position because it required longer hours and more difficult working conditions than faced by customer service managers. Second, while Parker began working for Luria's after Prado, he had been employed continuously since November 1991.

█ Moreover, the plaintiff admits that she received several promotions and wage increases throughout her employment. She also refused a promotion at least once. Having failed to identify any specific position for which she applied, for which she was qualified, and for which she was turned down because of her national origin, the plaintiff has failed to establish a prima facie case of discrimination. *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1521 (11th Cir.1991)(to establish a prima facie case plaintiff must

---

7. The other employees used as examples of wage discrimination were both Hispanic which gives no support to the claim.

prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected, under circumstances which give rise to an inference of unlawful discrimination).

*Conclusion*

Generally, an employer may adopt or maintain any worksite policy governing employees which has as its principal purpose a furthering of the employer's legitimate business interests so long as the policy does not infringe on individual rights, is not detrimental to the health or safety of the employees and, on balance, does not create an unfair advantage or disadvantage to any discrete group. More particularly, an English-only workplace rule adopted with a principal purpose of providing for effective supervision and evaluation of employees furthers a legitimate business interest without violating protected rights.

There is another practical justification for a policy which prohibits the use of a foreign language in the workplace as the primary or first language. As the Supreme Court observed in *Hernandez v. New York:*

> Just as shared language can serve to foster community, language differences can be a source of division. Language elicits a response from others, ranging from admiration and respect to distance and alienation, to ridicule and scorn. Reactions of the latter type all too often result from or initiate racial hostility.

500 U.S. 352, 371, 111 S.Ct. 1859, 1872, 114 L.Ed.2d 395 (1991). An insistence that employees speak English in the workplace serves the added business purpose of minimizing the sense of alienation and resulting hostility felt by employees and customers who don't speak or understand the foreign language.

On the record presented there is no showing that the policy, separate from aberrant behavior of one or two individuals entrusted with its enforcement, created a hostile employment environment. Where an employer acts promptly to discipline or remove an offending supervisor, offers re-employment to the employee who has resigned before reporting the offensive conduct, and further offers the employee a choice of working locations to ensure an environment which accommodates personal sensitivities, it cannot be said that the employer has created a workplace environment hostile to the employee.

Prado's claim of disparate pay based on national origin is totally without a factual foundation.

Accordingly, it is **ORDERED AND ADJUDGED** that the defendant's motion for summary judgment is GRANTED.