**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

and

Leydis Rodriguez, Angela Samboy, Solange Bernal, Julissa Bautista, and Mariela Del Rosario, Intervenors,

v.

**SEPHORA USA, LLC, Defendant.**

Leydis Rodriguez, Angela Samboy, Solange Bernal, Julissa Bautista, and Mariela Del Rosario, Plaintiffs,

v.

Sephora USA, LLC, Frank Cimitile, Diana Saini, Misa Gjonbalaj, and Richard Tran, Defendants.

No. 03 Civ. 8821(NRB).

United States District Court, S.D. New York.

Sept. 13, 2005.

Raechel L. Adams, Equal Employment Opportunity Commission, New York City, for Plaintiff Equal Employment Opportunity Commission.

Eugene M. Bellin, New York City, for Plaintiffs–Intervenors.

Joseph Baumgarten, Proskauer Rose LLP, New York City, for Defendants Sephora USA, Gjonbalaj, Saini, and Tran.

Miriam Lieberson, Jackson, Lewis, LLP, New York City, for Defendant Frank Cimitile.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

The Equal Employment Opportunity Commission ("EEOC") initiated this action in November 2003, alleging that defendant Sephora USA, LLC ("Sephora") discriminated against five former employees and a potential class of Hispanic employees by, *inter alia*, maintaining an "English-only" rule in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* In March 2004, plaintiffs-intervenors [1] filed a complaint joining the action and naming several former and current Sephora employees as defendants.[2] While

---

1. The five named employees are Leydis Rodriguez, Angela Samboy, Solange Bernal, Julissa Bautista, and Mariela Del Rosario ("plaintiffs-intervenors").

2. The individual defendants are Frank Cimitile ("Cimitile"), Diana Saini ("Saini"), Misa Gjonbalaj ("Gjonbalaj"), and Richard Tran ("Tran").

the circumstances concerning the separation of the individual plaintiffs differ, none were fired for violating an "English-only" policy.

Sephora and three of the individual defendants, Saini, Gjonbalaj, and Tran, now move for partial summary judgment on the issue of whether the policy on the use of English Sephora outlined in a memorandum to store managers constitutes an unlawful English-only rule. For the following reasons, we grant defendants' motion.

## BACKGROUND [3]

Sephora operates retail cosmetics stores throughout the United States. During the relevant times discussed herein, Sephora operated stores in the New York Metropolitan area. Each Sephora store is managed by a store director, who reports to a regional manager. Stores employ assistant managers and first-level supervisors.[4] Within a store, sales personnel, referred to as "consultants," may be assigned to different departments.[5] Sephora refers to the sales floor staff as the "cast" and the sales floor as the "stage." In addition to sales employees, Sephora stores employ maintenance and stock department employees, referred to as "quality" employees.

This case centers on Sephora's store in Rockefeller Center, which opened in late 1999 and closed in August 2002. The plaintiffs-intervenors are all former employees of Sephora who worked in the Rockefeller Center store as either consultants or cashiers. The plaintiffs-intervenors are all bilingual in Spanish and English. The individual defendants worked at various times as managers in the Rockefeller Center store and at other New York area stores.

In or about August 2002, the plaintiffs-intervenors filed charges with the Equal Opportunity Employment Commission ("EEOC"), complaining of an allegedly discriminatory English-only rule, as well as alleging that defendants discriminated against them on the basis of their national origin.

During the times relevant to this case, Linda Skinner has been Director of Sephora's Human Resources department. Skinner conducts conference calls with store directors and specialists in Sephora's U.S. stores approximately six to eight times a year to address human resources issues relevant to Sephora's operations (referred to as "HR Conference Calls").[6] In September 2002 Skinner conducted an HR Conference Call in which she addressed Sephora's expectations with respect to English in the workplace. Skinner followed up on the conference call by distributing a memorandum (the "All About HR Recap" or "Recap"), although plaintiffs dispute that all managers in the New York region saw the memorandum.

---

**3.** Unless otherwise noted, the following facts are taken from the parties' statements pursuant to Local Civil Rule 56.1. These are Defendants' Local Rule 56.1 Statement of Material Facts ("Defs. 56.1 Stmt."); Plaintiffs' Local Rule 56.1 Statement of Disputed Material Facts in Opposition to Defendants' Motion for Partial Summary Judgment ("Pls. 56.1 Stmt."), whose paragraph numbers correspond to those in Defs. 56.1 Stmt.; and the second part of Pls. 56.1 Stmt. titled "Plaintiffs' Additional Relevant Material Facts" ("Pls. 56.1 Stmt. 2"), which starts

numbering paragraphs detailing plaintiffs' additional factual allegations with "1".

**4.** Plaintiffs deny that all Sephora stores employ first-level supervisors. Pls. 56.1 Stmt. ¶ 3.

**5.** Sephora alleges, and plaintiff denies, that the same is true of cashiers.

**6.** Plaintiffs deny that all store managers participate in the calls.

The relevant section of the Recap is as follows:

6. *English in the Workplace*

- Sephora does not have, and has never had, an "English-only" policy.

- Generally, cast members may speak whatever language they choose.

- However, Sephora expects cast members who are on stage during business hours to speak English whenever clients are present.

- Of course, cast members are encouraged to communicate with clients in other languages, if the client wishes to do so.

- Before opening and after closing, as well as times when no clients are in the store, cast members are free to speak any language they choose.

- Cast members may speak any language they choose when off stage—for example, in a break room or office.

- Cast members may speak any language they choose when not on Sephora time—on a break or after a shift.

- Cast members may be asked to speak English in other situations if there is a business need—for example, where safety is an issue (when working on a ladder, changing out shelving, retrofits, etc.)

- While Sephora encourages the spirit of teamwork amongst all cast members, it does not expect cast members to speak English except in the limited circumstances described above.

Declaration of Joseph Baumgarten ("Baumgarten Decl."), Ex. E.

According to Sephora, each of the plaintiffs-intervenors is fluent in English and capable of complying with Sephora's expectations concerning speaking English while on stage. Defs. 56.1 Stmt. ¶ 18. It is undisputed that Sephora encourages bilingual cast members to speak in a foreign language (including Spanish) to a customer who prefers to speak in that language, and that the plaintiffs-intervenors were sometimes called upon to translate for customers who did not speak English. While plaintiffs do not directly contradict Sephora's characterization of plaintiffs-intervenors' English as fluent, they allege that some of the plaintiffs-intervenors "experience difficulty expressing themselves in English," and therefore "spoke Spanish at work when they were unable to express themselves in English." Pls. 56.1 Stmt. ¶ 19, *Id.* at 5. Plaintiffs further assert that "[a]s a result of a phenomenon known as code-switching—an unconscious tendency to begin to speak in Spanish, to respond in Spanish when addressed in that language, and to continue speaking in Spanish with native Spanish-speakers like themselves . . . the Plaintiffs–Intervenors were not 'capable of complying' with Sephora's 'expectations.'" Pls. 56.1 Stmt. ¶ 18. Plaintiffs further suggest that "[b]ecause [the plaintiffs-intervenors] code-switch as a matter of involuntary habit, they are triggered to speak Spanish not as a matter of 'personal preference and convenience' but as a matter of necessity." Pl 56.1 Stmt. ¶ 19. Plaintiffs also allege that the plaintiffs-intervenors were disciplined for speaking Spanish in the workplace, including in the break room and during their lunch hour, and for other instances of speaking Spanish that were clearly permissible under the policy outlined in the Recap. In addition to complaints about being disciplined for speaking Spanish in circumstances that would be clearly permissible under the policy outlined in the Recap and complaints about other discrimination on the basis of national origin, plaintiffs also argue that the policy embodied in the Recap violates Title VII.

Defendants moved for summary judgment in the hope of narrowing the issues in the case. Sephora maintains that the English-speaking policy it outlined in the Recap does not violate Title VII and moves for summary judgment on that issue.[7] For the following reasons, we agree with Sephora, and grant summary judgment on that issue.

At the outset it should be clear that the motion and our decision are limited to the legality of the policy as set out in the Recap. Therefore, we will not address whether the Recap created a new policy, Pls. 56.1 Stmt 2 ¶ 5; whether Sephora, or individual Sephora managers, applied more restrictive standards to when languages other than English could be spoken beyond those outlined in the Recap, or engaged in other discriminatory conduct, Opp. Mem. at 4; whether Sephora informed all the store managers and HR managers of the policy embodied in the Recap, Opp. Mem at 5; whether Sephora clearly communicated the policy to employees, Pls. 56.1 Stmt. ¶ 18, Opp. Mem. at 5; whether the policy remains in effect, Defs. 56.1 Stmt. ¶ 15; or whether expectations expressed in employee training conflict with the policy. Pls. 56.1 Stmt. ¶ 16. In their opposition papers, plaintiffs argue that the actual application of the policy varied from the policy described in the Recap, and that there therefore "genuine issue[s] of material fact with regard to when and where Sephora's English-only rule applies to employees." Opp. Mem. at 8. Thus at present, we are evaluating the written and official policy of Sephora as such, leaving to another day issues of whether it has been followed or breached in specific instances.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Federal Rules of Civil Procedure mandate the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing the record, we must assess "the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 957 (2d Cir.1993).

In order to defeat such a motion, the nonmoving party must affirmatively set forth facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505 (internal quotation marks omitted). In addition, when deciding a motion for summary judgment, a district court

7. As plaintiffs correctly point out, a number of their claims are outside the scope of this motion to dismiss. Opp. Mem. at 1–2. Among these are the claims that defendants violated Title VII by enforcing an unlawful English-only rule before the distribution of the Recap, by continuing unlawful discrimination after the Recap was issued, by taking other unlawful actions based on national origin, and by retaliating against employees who complained about discrimination.

may only consider evidence that would be admissible at trial. *See Nora Beverages v. Perrier Group of America, Inc.,* 269 F.3d 114, 123 (2d Cir.2001).

## II. Disparate Impact Under Title VII

■ Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a). To this end, the Act provides that plaintiffs can prevail on a "disparate impact" theory of discrimination, under which an employer can be found liable for discrimination for a policy that, although neutral on its face, acts to discriminate against the members of a protected class. 42 U.S.C. § 2000e–2(k)(1).[8] A complaining party can establish an unlawful employment practice under a disparate impact approach by demonstrating that "a respondent uses a particular employment practice that causes a disparate impact on the basis of . . . national origin and the respondent fails to demonstrate that the challenged practice is job related

for the position in question and consistent with business necessity," or by establishing the availability of an "alternative employment practice" and that the respondent refuses to adopt. *Id.*

We analyze a disparate impact claim with a three-stage burden-shifting framework. *See Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 160–61 (2d Cir.2001). In the first stage, the plaintiff must make a prima facie showing of disparate impact, which "requires plaintiff[ ] to establish by a preponderance of the evidence that the employer 'uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin.'" *Id.* at 160 (quoting 42 U.S.C. § 2000e–2(k)(1)(A)(I)). To make this prima facie showing of disparate impact, a plaintiff must "(1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two." *Id.* (citations omitted).

At the second stage, the employer must challenge plaintiffs' proof of disparate impact and, failing that, the employer must "demonstrate that the challenged practice or policy is 'job related for the position in question and consistent with business necessity.'" *Robinson,* 267 F.3d at 161 (quoting 42 U.S.C. § 2000e–2(k)(1)(A)(I)).

If the employer succeeds in establishing a business justification, "the disparate impact claim proceeds to a third stage. At this third stage, the burden of persuasion shifts back to the plaintiffs to establish the availability of an alternative policy or practice that would also satisfy the asserted

---

**8.** The EEOC brought this case under Title VII, while plaintiffs-intervenors are suing under Title VII, 42 U.S.C. § 1981 and the New York State and New York City Human Rights Laws. In general, we analyze claims under § 1981 and the state and city statutes in the same manner and therefore, where applica-

ble, our disparate impact analysis here extends to claims under all those statutes. *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 565 n. 1 (2d Cir.2000). We note that there is no disparate impact claim under § 1981. *Scelsa v. City University of New York,* 806 F.Supp. 1126, 1145 (S.D.N.Y.1992).

business necessity, but would do so without producing the disparate effect." *Robinson*, 267 F.3d at 161 (citing 42 U.S.C. § 2000e–2(k)(1)(A)(ii), (C); other citations omitted).

### 1. Plaintiffs Have Presumptively Established a Prima Facie Case of Disparate Impact

 We begin our discussion by referencing the relevant EEOC guideline which provides that "[a]n employer may have a rule requiring that employees speak only in English at certain times where the employer can show that the rule is justified by business necessity." 29 C.F.R. § 1606.7(b).[9] The "certain times" guideline set out in § 1606.7(b) essentially assumes that the existence of such a rule satisfies an employee's burden of establishing a prima facie showing of disparate impact and advances the inquiry to the second step of the burden-shifting framework.[10] We decline to decide whether that aspect of the guidelines is a proper interpretation of Title VII, and instead follow the example of *Fierro v. Saks Fifth Avenue*, 13 F.Supp.2d 481, 488 (S.D.N.Y.1998) and "proceed[ ] directly to the real issues presented by … plaintiff[s'] claims, by simply conceding in the abstract the existence of a *prima facie* case." *See also Roman v. Cornell Univ.*, 53 F.Supp.2d. 223, 235 (N.D.N.Y.1999). We therefore assume, for the purposes of this motion, that plaintiffs have satisfied the first stage of the three-stage burden-shifting framework by making a prima facie showing of disparate impact.[11]

---

9. Plaintiffs contend that "in reality," Sephora managers have acted as if Sephora has an English-only rule that requires only English to be spoken at all times in the workplace. Opp. Mem. at 8 The EEOC guidelines presume that a rule of that type violates Title VII. 29 C.F.R. § 1606.7(a). *See also EEOC v. Premier Operator Servs., Inc.*, 113 F.Supp.2d 1066 (N.D.Tex. 2000) (quoting 29 C.F.R. § 1606.7(a) and holding that "[a] *blanket* policy or practice prohibiting the speaking of a language other than English on an employer's premises *at all times*, except when speaking to a non-English speaking customer, violates Title VII's prohibition against discrimination based on national origin.") (emphasis added). This motion, however, only concerns the policy outlined in the Recap, which is plainly a "certain times"-type rule of the kind described in 29 C.F.R. § 1606.7(b). The plaintiffs' statement that "[i]t is impossible to separate" Sephora's written policy "from the practices carried out by Sephora management," Opp. Mem. at 5, and their argument that we cannot determine the legality of the policy embodied in the Recap on a motion for summary judgment, Opp. Mem. at 6, confuse the policy embodied in the Recap with the application of English language policy by individual managers.

10. Defendants urge us to reject the EEOC's guidelines as contrary to Title VII. Support Mem. at 9–12 (citing *Garcia v. Spun Steak*, 998 F.2d 1480 (9th Cir.1993); *Velasquez v. Goldwater Mem'l Hosp.*, 88 F.Supp.2d 257, 262 (S.D.N.Y.2000); *Kania v. Archdiocese of Phila.*, 14 F.Supp.2d 730, 735–36 (E.D.Pa. 1998); *Long v. First Union Corp. of Va.*, 894 F.Supp. 933, 940–41 (E.D.Va.1995)). The parties have devoted minimal briefing to explaining the level of deference we owe to the EEOC's guidelines. Plaintiffs address deference superficially, citing only to Justice Scalia's concurring opinion in *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005), in which he reiterates his adherence to the view of deference expressed in his lone dissent in *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Defendants argue that we should reject the EEOC's guidelines here as inconsistent with Title VII. Support Mem. at 12 n. 11.

11. We note that although plaintiffs' memorandum follows the analysis framework for a disparate impact claim, it is also sprinkled with occasional allegations that the policy expressed in the Recap was promulgated and enforced with the aim of discriminating against Hispanic employees, suggesting a disparate treatment theory. *See, e.g.*, Opp. Mem. at 3 ("a dispute of fact exists as to whether Defendants have *intentionally* discriminated against a class of Hispanic employees") (em-

## 2. Defendants Have Demonstrated a Business Necessity

As we noted earlier, at the second stage the burden shifts to the defendants to demonstrate that the policy is "job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e–2(k)(1)(A)(I). Business necessity is also incorporated in the EEOC guidelines, which permit a "certain times" English rule "where the employer can show that the rule is justified by business necessity." 29 C.F.R. § 1606.7(b).

Courts have found "certain times"-type English-only rules permissible when they are justified by a need to stem hostility between bilingual employees speaking a foreign language and employees who do not speak that language, as well as when English-speaking supervisors need to understand what is being said in a work area. *Roman*, 53 F.Supp.2d at 237; *Kania*, 14 F.Supp.2d at 736; *Prado v. L. Luria & Son, Inc.*, 975 F.Supp. 1349, 1357 (S.D.Fla. 1997); *Long*, 894 F.Supp. at 941; *Gonzalez v. Salvation Army*, No. 89–1679–CIV–T–17, 1991 WL 11009376, at *3 (M.D.Fla. June 3, 1991) (aff'd in unpublished opinion, 985 F.2d 578 (11th Cir.1993)). ·Other cases have approved of English-only rules similar to the Recap policy, but did so by concluding that plaintiffs had failed to make prima facie showings of disparate impact. *Spun Steak*, 998 F.2d at 1488 (9th Cir.1993) (concluding that "a bilingual employee is not denied a privilege of employment by the English-only policy"); *Garcia v. Gloor*, 618 F.2d 264, 272 (5th Cir.1980) (holding that "an employer's rule forbidding a bilingual employee to speak anything but English in public areas while on the job is not discrimination based on national origin as applied to a person who is fully capable of speaking English and chooses not to do so in deliberate disregard of his employer's rule.").

With this legal framework we will address the specific business justifications Sephora has proposed in defense of the Recap policy. At the outset of this discussion, we will clarify the context in which Sephora asserts it can apply the policy set out in the Recap. Sephora created written job descriptions for the consultant and cashier positions. Declaration of Raechel Adams ("Adams Decl."), Exs. 21, 22. The written job descriptions include an ability to clearly communicate, which in this context, the midtown Rockefeller Center location, required English proficiency. *Id.* We note that, consistent with the printed job descriptions, all the plaintiffs-intervenors can communicate in English. Four of the plaintiffs-intervenors admitted that they speak fluent English. Rodriguez Tr. at 33;

---

phasis added); Opp. Mem. at 15 ("[U]nder disparate treatment analysis, as well, the facts show that Hispanic employees in particular have been targeted by Sephora's English-only rule"); Opp. Mem. at 21 (arguing that Sephora's business justification is "nothing more than a pretext for targeting Hispanic employees based on their national origin" and alleging that Sephora told only Spanish-speaking employees to speak English).

Disparate impact claims "involve employment practices which are facially neutral, but fall more harshly on one group than another and cannot be justified by some business necessity," while a disparate treatment claim "alleges that the employer treats some people less favorably than others because of race" or on other protected grounds. *Hayden v. County of Nassau*, 180 F.3d 42, 52 (2d Cir.1999) (citing *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). "As part of a disparate treatment claim, the plaintiff must establish that the employer acted with the intent to discriminate." *Id.* Although plaintiffs have alleged instances of intentional discrimination by local Sephora managers, they have not alleged any facts to suggest that the promulgation of Sephora's English policy was motivated by discriminatory animus.

Samboy Tr. at 10; Bernal Tr. at 31; Del Rosario Tr. at 139, 177. Bautista, the fifth plaintiff-intervenor, when asked if she was fluent in English, testified: "Kind of, I wouldn't say completely," and explained that she does not know how to say or write "certain words," although she can understand English and make herself understood in English. Bautista Tr. at 47. Furthermore, all the plaintiffs-intervenors were deposed without interpreters and were able to understand and respond to questions in English.

Plaintiffs do not assert that it is illegal for Sephora to require proficiency in English as a condition of employability for consultants and cashiers, but rather argue that a business necessity is needed to require those employees to speak English on stage during business hours when clients are present. Defendants maintain that speaking English in the presence of customers is job related for sales staff and consistent with its business needs of politeness and approachability as components of customer service. Defendants explain that "because client service is the core of Sephora's business, the Company ... expects employees who are hired and trained specifically to serve clients to speak English while on the sales floor out of respect for the client and in order to remain approachable to clients at all times," and characterize their policy as a "common sense rule against offending customers." Support Mem. at 8–9, 15 (quoting *Rivera v. Baccarat*, 10 F.Supp.2d 318, 324 (S.D.N.Y.1998)). Skinner and Marie–Christine Marchives, who was Regional Director of the Manhattan Region, provided the same rationale for the Sephora English language policy. Declaration of Joseph Baumgarten (Baum-

garten Decl.), Exs. F (Skinner Dep.) and H (Marchives Dep.).

Plaintiffs offer a number of rebuttals to defendants' business necessity argument. First, plaintiffs argue that "a dispute of material fact remains" as to "various Sephora managers' understanding of how client service is achieved through an English-only rule." Opp. Mem. at 17. Again we note that the potential for inconsistent views or policy application among Sephora employees are not material to its legality.

■ Plaintiffs also argue that Sephora's asserted business necessity justification is impermissible because "customer preference is not a valid defense to discrimination against employees." Opp. Mem. at 18 (citing *Bradley v. Pizzaco of Nebraska, Inc.*, 7 F.3d 795, 799 (8th Cir.1993); *Gerdom v. Continental Airlines, Inc.*, 692 F.2d 602, 609 (9th Cir.1982)). Plaintiffs' reliance on *Bradley* and *Gerdom* is misplaced. *Bradley* rejected customers' preference for clean-shaven deliverymen as a defense to a requirement that had a disparate impact on African American men, a large percentage of whom cannot shave because of a skin condition. *Gerdom* rejected customers' preference for slim female flight attendants as a defense to a weight requirement that applied only to women. The courts in *Bradley* and *Gerdom*, however, rejected those preferences as defenses to discrimination because the preferences were unrelated to job performance.[12] If a customer preference is sufficiently related to job performance then it qualifies as a "business necessity." *Gerdom*, 692 F.2d at 609 (quoting *Diaz v. Pan American World Airways, Inc.*, 442 F.2d 385, 389 (5th Cir.1971))("customer preference may be taken into account only when it is based on the company's inability

---

12. *Gerdom* also rejected the employer's justification that customers prefer slim female flight attendants because the justification was not neutral, but was instead discriminatory on its face. *Gerdom*, 692 F.2d at 609.

to perform the primary function or service it offers"). The requirement that a customer preference relate to job performance prevents employers from using customers' intolerance as a business necessity justification for a policy that has a disparate impact on a protected class. *Id.* Helpfulness, politeness and approachability, however, are central to the job of a sales employee at a retail establishment, and are distinct from customers' prejudices.

When salespeople speak in a language customers do not understand, the effects on helpfulness, politeness and approachability are real and are not a matter of abstract preference. Furthermore, just as courts have upheld a business necessity for a rule mandating that bilingual employees speak English in the workplace to stem hostility between employees, promoting politeness to customers is a valid business necessity for requiring sales employees to speak English in their presence. *See Roman,* 53 F.Supp.2d. at 237; *Kania,* 14 F.Supp.2d at 736; *Prado,* 975 F.Supp. at 1357; *Long,* 894 F.Supp. at 941; *Gonzalez,* 1991 WL 11009376, at *3.

Plaintiffs argue that customers do not actually find it rude when someone speaks a foreign language in front of them, and instead find rules mandating English offensive. In support of their argument, they mention a recent local news story in which a donut shop manager removed an "English Only" sign after customers objected on behalf of the shop's employees. Opp. Mem. at 18 n. 11. The EEOC relies on a hearsay news story in an endeavor to undercut Sephora's rationale for believing customers "feel welcome" when its employees speak English in their presence. *Id.* Apart from the prohibition on reliance in the summary judgment context on inadmissible hearsay, as we explained above we do not believe Sephora's justifications rest on customer preference. Furthermore, Sephora need not demonstrate that a particular percentage of customers' opinions corroborate its business judgment that certain behavior is impolite and unhelpful. We "do[ ] not sit as a super-personnel department that reexamines an entity's business decisions." *Scaria v. Rubin,* 117 F.3d 652, 655 (2d Cir.1997) (quoting *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986)).

Furthermore, the business necessities Sephora describes are similar to those the EEOC itself has suggested are proper. The EEOC's Compliance Manual provides that "situations in which business necessity would justify an English-only rule" include "communications with customers, coworkers, or supervisors who only speak English," "situations in which workers must speak a common language to promote safety," "cooperative work assignments in which the English-only rule is needed to promote efficiency," and "[t]o enable a supervisor who only speaks English to monitor the performance of an employee whose job duties require communication with coworkers or customers." Adams Decl., Ex. 47 ("EEOC Compliance Manual") at 13–23. Sephora's own business justifications overlap and are consistent with those suggested by the Compliance Manual.

We agree with the EEOC that "[i]t is common for individuals whose primary language is not English to inadvertently change from speaking English to speaking their primary language," and with its recommendation that an employer should therefore "inform its employees of the general circumstances when speaking only in English is required and of the consequences of violating the rule." 29 C.F.R. § 1606.7(c). Speaking English is undoubtedly less comfortable for some bilingual people than speaking another language, and the EEOC therefore makes the emi-

nently reasonable suggestion that employers evaluating whether to adopt a rule consider the "English proficiency of workers affected by the rule." EEOC Compliance Manual at 13–24. But plaintiffs rely on the extreme views of Dr. Susan Berk–Seligson, who holds a Ph.D in linguistics, about the supposed inability of bilingual Hispanics to refrain from speaking Spanish. Adams Decl., Ex. 35 (Declaration of Susan Berk–Seligson, Ph.D. ("Berk–Seligson Decl.")). Setting aside the issue of the admissibility of Dr. Berk–Seligson's declaration under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), we point out that the EEOC's litigation adoption of Dr. Berk–Seligson's views is inconsistent with its statements in the Compliance Manual. While the Compliance Manual contemplates the circumstances that are appropriate for an English-only rule, Dr. Berk–Seligson claims that Hispanic bilinguals will speak Spanish unless they are "threatened with *corporal* punishment or actually ... punished." Berk–Seligson Decl. ¶ 5 (emphasis added). Moreover, there is no suggestion that this case is about instances of reversion to one's native tongue for a single word or phrase.

We therefore conclude that the English language policy set forth in the Recap is job related for Sephora consultants and cashiers, and is consistent with business necessity.

### 3. Plaintiffs Have Failed to Demonstrate A Less Discriminatory Alternative to The Recap English Policy

After an employer demonstrates that a challenged policy is "job related for the position in question and consistent with business necessity," 42 U.S.C. § 2000e–2(k)(1)(A)(I), the burden of persuasion "shifts back to the plaintiffs, who must establish the availability of an alternative policy or practice that would also satisfy the asserted business necessity, but would do so without producing the disparate effect." *Robinson,* 267 F.3d at 161 (citing 42 U.S.C. § 2000e–2(k)(1)(A)(ii), (C); other citations omitted). In this regard, plaintiffs argue that the problems Sephora perceives as stemming from "cast" speaking foreign languages around customers are actually the result of their standing around talking to each other instead of greeting and assisting customers. Opp. Mem. at 17. Plaintiffs therefore argue that a less discriminatory alternative measure to the English rule set out in the Recap would be a rule emphasizing the greeting policy and discouraging "cast" from standing around talking to each other. Opp. Mem. at 21. This fails entirely as an alternative policy because it does not address when Sephora may require employees to speak English. We find that plaintiffs have failed to satisfy the third stage of the burden shifting framework by raising a material issue of fact as to the availability of a less discriminatory alternative to the English policy set out in the Recap.

### CONCLUSION

For the foregoing reasons, we find the policy on the use of English outlined in the Recap is legally permissible and therefore grant defendants' motion for partial summary judgment on that issue.

**IT IS SO ORDERED.**